May it please the Court. I'd like to reserve three minutes for rebuttal. Your Honors, this Court's recent decision in Avery demonstrates exactly why the District Court's order in this case should be reversed. Avery held that a District Court may invalidate an arbitration provision under Rule 23d, but confirmed that to do so the Court must engage in a Gulf oil analysis, weighing the need for a limitation against the potential interference with the rights of the parties. That right being the right to enforce an arbitration agreement under the FAA. In Avery, the Court conducted... I realize Gulf is discussed a lot, but you know Gulf dealt with restrictions on communications with class members, right? Remember? Yes, yes. That's not really what's happening here. This is just the District Court declined to enforce the arbitration agreement against... I forget what her name is, but... Against Plaintiff Simmons. Yeah. That's a fair point, Your Honor. I mean if this is just a matter of enforcing the arbitration provision, then I think the arbitration must be enforced. The issue is that the Court chose not to enforce the arbitration provision under a Rule 23d analysis, and that's the only basis for the Court refusing to enforce the arbitration agreement, and so we have to conduct the Gulf oil analysis to determine whether that was a proper limitation on Paulus Choice. Otherwise, absent 23d and it being a considered a communication with putative class members, there's no basis for refusing to enforce the arbitration agreement in this case. Is the Gulf oil... does that provide a separate basis for reversal in your view? I'm sorry, Your Honor, could you repeat your question? Yes, does Gulf oil provide a separate basis for reversal? I think Gulf oil does provide a basis for reversal in this case, and I think it's apparent when you can compare and contrast the facts of this case as compared to the Court's decision in Avery that Gulf oil does necessitate the reversal. The Court in Avery... On the substantive concern in Gulf oil? That is, there was no real interference, there was no, you know, or the procedural part. You know, the Court in Gulf oil says at the end there's got to be findings and explanations. Yeah, I'm talking about the substance, you know. The fact that there isn't, like, findings written like 123 is not our issue, it's that the Court's order does not reflect the analysis that's required to issue an order restricting communications under Gulf oil. And like I said, in Avery is a perfect example. In Avery, the Court conducted a very careful analysis, as Gulf oil requires, covering four pages that reviewed the agreement to determine whether there were misleading and coercive communications that led to the agreement. The Court found that the agreement was coercive in nature, that the employees were deemed to agree to it if they did not quit their jobs. The Court found that the defendant's communications in that case disparaged class actions. And the Court found that the defendant's communications were internally inconsistent, presumably designed to prevent class members from opting out of arbitration and into the class action. The Court in Avery went to great lengths to discuss the need for the limitation, comparing it to a laundry list of similar cases with justifying circumstances. And in those cases, each one of those cases involved coercive and misleading behavior on the part of the defendant. Counsel, can I ask, I think there's a little bit of an ambiguity in the District Court's order. I mean, in one respect it says that she didn't have the proper notice of the effective arbitration agreement, but it also said that she didn't have notice of the arbitration agreement at all. How do you read the District Court's order? Yes, Your Honor, so to step back, before we dealt with Mrs. Simmons, we dealt with eight other named plaintiffs. In those cases, or in that case, the Court ordered three named plaintiffs to be compelled to arbitration because they were on notice of the arbitration provision. On the other five, the Court determined that a need for many trials was required to determine whether they actually consented to the arbitration agreement and knew the arbitration agreement was there. So those, we need to go to a many trials to see whether Paula's Choice's purchase flow was sufficient to bind them to that agreement. With Mrs. Simmons, the Court took a step further and basically said that, you know, it doesn't matter whether she agreed to it because I'm going to refuse to enforce this on a more general principle that it's never appropriate to enforce an arbitration agreement against a class member or putative class member or named plaintiff after that was entered into after the agreement or after the case was filed because, unless, unless the arbitration agreement specifically advises of the particular class action. So she, essentially in the District Court order, they assumed she had knowledge and just said the notice wasn't enough because of the effect on the class action. Exactly. Or the opposite, they determined it on this grounds instead of going back to the Court for another many trials. The worst though, the District Court could find that she did not have notice, right? Our position would be that she did have notice because she made the purchase after we had already filed a motion to compel in a case that she's the named plaintiff. But she wasn't named in the, they make a big deal that she wasn't named in the original motion. You're right, Your Honor. And you just added her to the, to the reply. Yeah. I mean, that's not, that's not, you know, copacetic. Yeah. So she was not named in the original motion because she had not yet made a purchase that, pursuant to which she agreed to arbitration. Let me ask you this. With respect to Simmons, before she made any of her purchases, well, I don't even know how to, maybe my question's not quite accurate, but when did Paula's Choice first adopt an arbitration clause? Yeah. Paula's Choice first adopted an arbitration clause before this case was filed in March of 2023, I want, I want to say. And plaintiffs actually allege that, they, they allege the presence of that arbitration agreement and plead their class around that arbitration agreement, including Plaintiff Simmons. Now, some of the, some of these plaintiffs were longtime users of Paula's Choice, correct? Yes. And they had their own accounts? They had their own accounts, yes. Mm-hmm. So how did the arbitration agreement affect, how was that all put together? Yes, Your Honor. So the, the issue is they're longtime, some of them are longtime, I guess, or purchased something from Paula's Choice a long time ago, I guess I should say. The issue here is we, we moved to enforce the arbitration agreement against only those plaintiffs who subsequently purchased additional products after the lawsuit was filed that, in doing so, agreed, went through the purchase flow, agreed to the terms of use that included the arbitration provision. So we are not trying to... I gather, though, that with respect to some of the plaintiffs, especially the three that were referred to the mini-trials, there's some questions about whether or not they even got the notice? I mean, they got, they were advised of the... Yeah, the... Is that what the dispute is about? That is what the dispute as to the other named plaintiffs is about. That's, that's what the mini-trials about, is about, is whether going through the purchase flow, the terms of use were conspicuous enough, and the statement that says by, by clicking the purchase button, I agree to the terms of use. So that is, that is the issue left with respect to the other five plaintiffs. Did you appeal that issue, or could you have appealed that issue, or? It was not a denial of a motion to compel arbitration yet, because we have a mini-trial, so we have not appealed that. You've got it. I have two questions. So, for our purposes, you're saying we don't have to reach whether or not Simmons had notice of the arbitration agreements, all the other stuff? Exactly, yes. It's, it's whether or not the district court can create, under a Gulf Oil analysis, without coercion, without misleading communications, whether the court can just create a bright-line rule that it's never okay to enforce an arbitration agreement against a named plaintiff, unless it specifically advises of every class action that might be filed at any point in time. So the court's order essentially would require any time any class action gets filed in, in federal court, whether it has merit or at all, we would have to adjust our terms of use, or the arbitration agreement that was otherwise enforceable would cease to be enforceable. My other second question, under Rule 23d, what, under what provision would, is the district court's authority under in this case? Because it seems like this doesn't fit any of those fact patterns that, you know, Simmons voluntarily purchased something on her own and then clicked on an arbitration agreement. So I'm not exactly sure what under 23, under which provision under 23d this would fit into. I agree with you, your honor. This is a, it's a transaction that's completely different than us imposing a, a arbitration agreement on a, on someone and saying you have to sign it, and us telling them that this is like, you need to sign it because class actions are unfair. This is, go ahead. Oh, I was just gonna say this is, it is a voluntary transaction where in the ordinary course the plaintiff came to us, purchased additional products that she said she wasn't ever going to purchase in the first place again in her complaint, and then agreed to the arbitration agreement. What, do we know which sub provision the district court purported to act under 23d? It's not entirely clear exactly which provision. I think it is the provision that allows you to limit the communications of the parties or conduct other procedural matters. Okay, sorry. Do you, would you enlighten us as to what you think are the limits then of rule 23d in terms of the court's ability to kind of stop mid arbitration and class, etc? Yes, your honor. Because before you said, you know, this can't be a bright line rule which you impute to the district court. So what are the limits then of 23d? I think the limits of 23d are described in Gulf Oil. That's where you have to conduct this analysis, and I think Avery did a very good job of doing this. Looking at the defendant's behavior and determining whether the defendant's behavior, including coercive or misleading communications, warrants a limitation to protect the fairness of the class action. Not a situation where there is an ordinary course agreement that a plaintiff enters into afterwards. So I think it very is, I think Avery did a very good job of showing that you have to look to see if there's something that the defendants or others are doing that require, that requires the limitation. And then you have to balance that limitation, whatever it may be, to the, against the right of the party to enforce the arbitration agreement. And then you have to decide what the most appropriate remedy, if there is a need at all. I was just going to ask, suppose Ms. Simmons were just a class member. Mm-hmm. Same argument? Yes, your honor. Yes, your honor. In my argument there would be a class member before the, or a putative class member before the class action is filed, would go to our website, would agree to be bound by our, be bound by arbitration, would be out of the class. There shouldn't be a distinction between that person and a person that comes to our website, agrees to the terms after every, every time a class action. Doesn't that interfere with the whole idea of a class action, which is it's an opt-out? Not in this situation because they are opting into our arbitration agreement by making the purchase. They are then taking an affirmative step. It's distinguished against Avery where it was imposed upon them and then they had to opt out of the arbitration agreement, opt out of the agreement, out of the, into the class action. That's not the case here because she came to us and she signed the agreement and by doing so she took herself out of the class action. Okay, go ahead and reserve the rest of your time. Yes, Your Honor. Morning, may it please the court. Kevin Green for Apley's and that's actually a good place to begin because there's only one plaintiff of interest here and that's Samantha Simmons. There are 106 other plaintiffs in the district court awaiting the conclusion of this proceeding. So I want to talk about, start with the proposed disposition and look at this case through the lens of that and the Gulf oil analysis in particular. And we've argued that that's waived because there was no request for findings. I know that's a tough argument, waiver is a tough argument, but I want to explain why it's so important. First of all, in this case there was an opportunity to make the request. I understand the district court said, okay, well here's where I'm going. There was no indication of that even from the opposing parties. But at SCR 13, in our opposition to the motion to clarify, we cited a number of Rule 23d cases and then Paula's Choice had a reply at SCR 6 where those simply aren't addressed. And I don't see how you can take a U.S. Supreme Court decision and then appeal and say, well, look what we found. I mean a Gulf oil, which is really synonymous with the whole analysis in this area, and it's never cited below. There was a chance to cite it, to give the district court a chance to address this. Well, if Gulf oil requires those findings to rule under Rule 23d, isn't it the district court's responsibility to know the law and follow the law? Well, I think party presentation, yes, in short, yes. But party presentation also plays a role in it. I mean, judges are reacting to the arguments made to them. So doesn't a party have an obligation to say, especially not just, oh well, there are findings generally required, but there's this U.S. Supreme Court case that you're not citing. Isn't though, going back to Judge Bumate's question, whether the party missed it or not, doesn't Gulf oil basically say that is the responsibility of the district court? So how do we, you want us to basically ignore the requirements of Gulf oil? No, not at all, Your Honor. I think the requirements of Gulf oil actually were met. If you look at the cases cited in the briefs, and by that I mean that the findings do not have to be perfect or extremely meticulous. There are plenty of orders where that simply wasn't the case. Take the Logitech writ proceeding, okay, unpublished, but that shed some light on the quality of findings that are necessary. And there weren't specific findings in that case, and it certainly wasn't enough for clear error. Can you point to where the weighing took place, even if somewhat elliptical in this case? Your Honor, I don't have the order in front of me, but I think the district court considered that the impact on a class action of this sort of gambit, frankly, of there's a pending case and the defendant understandably wants to get rid of a plaintiff or try to resolve with a plaintiff or not have them argue in court. And so, I mean, the findings aren't perfect, but I mean, here's the problem I have with that. Now, if the case goes back for findings, on the face of it, that's a procedural reversal that looks fairly innocent because the court isn't saying, well, one side needs to arbitrate or not. But what does that lead to? That leads to potentially a second appeal because the district court makes findings, adding a little bit to what it's already done, probably comes out the same way, there wouldn't be any guidance that would change that. And then we're back here a year or two later with over a hundred plaintiffs that aren't affected and a full stay of proceedings under the Supreme Court's coinbase decision. So I'm just asking the court to keep that context in mind. That's why we argued waiver and that's the practical effect. And so to cut to how this could turn out in the disposition, I think the strongest that could occur would not be that arbitration has to be compelled, but that Plaintiff Simmons is similarly positioned as the five other plaintiffs where it's a genuine fact dispute. And the order pointed out that, well, the standard under Wilson v. Hughes, the Ninth Circuit decision, is what did the plaintiffs know? Did they have reasonable notice? And the court went through very, very carefully, meticulously, all the evidence on the motion to compel arbitration and concluded that I can't tell. I need the full run of purchases. And I think that was a measured decision. So I think the worst that could happen here, from our perspective, is that it goes back for, with directions that the district court follow the same disposition, meaning hold in advance. And that's at ER 3738. But what's the harm here then? I don't understand that. Then it would just go back to what's happening already. It would go back to what's occurred with the five other plaintiffs. So you're saying that Ms. Simmons would be part of the class of the five that are having a mini-trial? Yes, and I want to be very clear that I think that's the strongest thing the court could do and might do here. Well, we wouldn't have to do that because the district court never made any findings on Ms. Simmons's notice, right? Well, yes, and the order is a little bit fuzzy on that and understood. And I think the court essentially assumed that she had some kind of knowledge of it. But I want to get to... I thought she did that because of the counsel, because, you know, it's a notice motion and she's a plaintiff, not just a class member, a putative class member. Right, right. She's a class representative. But on the notice from the motion to compel, I think that's a really important point because the defendant has emphasized that quite a bit. And I think what the problem with that is Paula's choice moves to compel as to eight plaintiffs of 107. And now it's saying later and saying here that Samantha Simmons should have known. Well, what does it tell you if they move as to only eight of 106 and they don't move as to her? Doesn't that send the opposite signal? That we're not moving to compel as to you. And that's exactly the kind of confusion and uncertainty that Rule 23 is designed to get at. That that kind of thing shouldn't go on. The defendant has to be more consistent about that. So, and the motion wasn't directed to her and I think there's an opposite inference. Well, it doesn't concern me, much less that, well, I'm supposed to connect the dots. This motion doesn't apply to me. And somehow I'm in the same position as the other people, even though that hasn't even been litigated. So I don't think that's the notice that really would satisfy that she had reasonable notice. What about the pleadings? I mean, it was in the pleadings and she's, was the name plaintiff? Correct, she's the name plaintiff. And so that actually heightens her rights, I think. But doesn't that also prove her notice? Well, yes, but notice of what? Yes, notice that there's an arbitration clause and it's alleged in the original complaint and the amended complaint. There's no dispute about that. And, you know, the class is defined as to people who purchased before the arbitration clause in March of 2023. So that's no secret. That's alleged. But the effect of that on her case is a legal conclusion. I mean, she's a lay person. She's supposed to conclude that, well, there's an arbitration clause, I've alleged it. She's not charged with knowledge of things in her complaint? She is charged with knowledge of it, but to go back to... How do you say that she didn't have knowledge of the arbitration agreement if the complaint said it? No, I'm not saying that, Your Honor. I'm saying that, of course, she knew about it. There was an arbitration clause, but the legal effect was a legal determination for the court. I mean, she's not in a position as a lay person... That's a Rule 23d question, then, you're saying? Yes, exactly. What notice should she take from that? The fact that she knows there is an arbitration clause and she later challenges it. And the district court finds, in fact, that nobody has gone by this. How does that then not run into a FAA issue, then, if we're saying that, you know, that you have to, whenever there's a pending class action, there has to be special notice or heightened notice about the effect of it on the class action? That seems to be targeted directly at arbitration agreements. I don't think it's heightened notice, and I think Avery really addresses this, and, you know, if it doesn't foreclose a lot of where this appeal started, which was Rule 23d doesn't authorize invalidation of an arbitration agreement. Right. And that's really what was at the core of when we first got up here, and Avery, I think, settled that recently as a matter of Ninth Circuit law, and so it holds squarely that Rule 23d authorizes that, and no conflict with the FAA or the Rules Enabling Act. Now, you know, the circumstances in Avery are a bit different than here. Unquestionably, Your Honor, and I'll freely concede that factually it may be a stronger case, but the question is whether it applies to this one. And reviewing the district court orders, there's a theme, really, that, and there's more from district courts on this, and I understand those are unlikely to be cited, and they're less persuasive, but that's just where the issue comes up a lot more, that there's a theme that it's not enough simply to say something like, all claims that have arisen, and assume that someone's going to understand that's going to apply to my pending class action, and again, getting back to the purposes of Rule 23d. And I think the cases say, that I want to be very clear about this, that there's not some sort of absolute rule or compelled speech that a defendant has to disclose this or that. What it does have to do to comply with Rule 23d, and I think the cases say this, is do something more, something more than saying, well, have arisen. And I think the Court, to get to Judge McEwen's question earlier, doesn't have to decide what the outer edges of this, because I think under any standard, just saying, have arisen, isn't enough. And so, I mean, there are a couple of cases where Cater v. Churchill Downs is one case that was cited in the district court's order, that's the Big Fish Casino case. But, you know, Avery says, you know, that you could enjoin the arbitration agreement if there's, if it was misleading or attempted to disrupt the opt-out process, but here, none of that happened, right? No one's accusing Paula's choice of being misleading or attempting to avert the opt-out process. Well, yes, but I'm not sure what opting out, how that would apply to this, but. Well, that, to me, that suggests that this is an arbitration-only rule, like the way the district court ruled, because she didn't make any findings. The district court did not make any findings that there was anything misleading, that there's an attempt to disrupt the pending class action, and the district court seemed to say, because this is an arbitration agreement with the pending class action, you have to have special notice. That's how I read it. I don't think so, Your Honor, respectfully. I think the district court said, and a finding can carry a lot of weight, qualitatively, and said, summed it up, that Paula's choice didn't let Ms. Simmons know what she was getting into. Yeah, and that's really the theme in all the cases. Isn't that really, following up on Judge Bumate, isn't that really kind of a custom notice rule in this arbitration setting, which kind of goes against the FAA? Well, if that were true, I think Avery would have come out differently, in the tenor. Well, but Avery, as we already talked about, is really quite different circumstances. So, maybe just to turn it around, what would they need to say to meet your criteria? I expected this question. Good. And that's why I say, something more is required than, you know, claims that have arisen must be arbitrated. And that's all we've got here. I hear you, but then, to answer the more specific question, something more, what would one need to put into the agreement to meet the something more? One example is to say that this agreement could affect claims in pending litigation, including the case name of X. I'm not saying that's sufficient, but I'm saying that that would be one option, one way to approach it that is pretty bare bones. And again, this is compliance with Rule 23D. And these are general principles applied to Rule 23D to control the class action process and prevent confusion and disruption, which the court has the authority to do in a pending case. To go back to the cases that I had in mind on this, Judge McKeon. I want to clarify one thing. Before the suit was filed, had they already adopted their arbitration agreement? Yes. Okay. Thank you. Yeah. Yeah. It was adopted about a year before. And the cases, Judge McKeon, that I have in mind on this, well, what's the outer edge and how far to go, are Cater v. Churchill Downs, where the notifications do at least mention the lawsuits but fail to meaningfully inform users about their rights. That's one example. There is the Monroe case, I think it's Eastern District of Virginia, as illustrations of that. But I think whatever the edge is, the court doesn't need to get to it here because have arisen just, and that's just not enough. I want to talk just briefly about... Counsel, do you mind answering my question? Do you have a view under which subprovision or Rule 23D the district court purported to rule under? I think it's encompassed by the extremely broad other procedural matters. Other procedural matters? In Rule 23. Similar procedural matters. Similar procedural matters in Rule 23. And that's discussed in Avery, which says gives very broad power, which is all consistent with Gulf Oil. Okay. Thanks. Now, on the disposition, again, I just want to be very clear because I don't want to concede something that is misunderstood. And that is that I think the furthest the court could go here, if it doesn't affirm, is for Ms. Simmons to be in the same position as the other five plaintiffs. I'd like to ask you the last... Does it make a difference here, substantively, that she is a named plaintiff? I think it does, Your Honor. Not just a putative class member that they've decided they're going to go after. Right. Right. I think it does. And the case name is sort of slipping from me, but I think it's Dominguez, or at least it's cited in her brief that, yeah, named plaintiff makes a difference. How so, from your perspective? Well, because she's a champion for the class under the body of law under Rule 23. I mean, fiduciary responsibilities to the class. And this isn't really going to come up much, pre-certification with absent class members. I mean, they're not going to be in this position. But again, there's a case that we've cited. I think it's Dominguez in her brief. Okay. Can I just ask a question? Why would we have to decide whether or not we were to reverse this, you know, this 23D ruling? The district court can then decide that, right? Yes, it could. It could decide that. But I'm wary of any resolution that creates a second appeal here that isn't necessary. And I just respectfully ask the court to keep that in mind. Thank you, counsel. Thank you. May it please the court. I'll start by addressing the last thing that counsel addressed. I don't think that this needs to be remanded back to the district court to determine whether Plaintiff Simmons actually consented to this agreement because Plaintiff Simmons is more situated to the three plaintiffs that have already been compelled to arbitration than she is to the other three. Well, not based on the district court's ruling, the district court ruled because they were named in the motion to compel. Your Honor, yes, you're right. And I disagree with the district court's ruling on that point. I think because she's a named plaintiff, because she's charged with knowledge of her pleadings, and because she's charged with knowledge of the class. She's a named plaintiff that has to know what's going on in this case. She's representing a class. For her to claim that she didn't know that a motion to compel was filed or that she wasn't agreeing to arbitrate her claims, I think is incredible. So I would say that she was on notice of all of this, and you don't need to take it a step further. As to the council's waiver argument, I agree with your honors that this is not a situation, this is a rule 23d order requires the Gulf oil analysis. And frankly, it requires the proponent of that to establish that the specific record that justifies that. You can't waive that when it's their burden to do that. And then finally, I'll just say, I wholeheartedly agree that this court's order, this enunciation of a principle is specific to arbitration agreements and treats it differently than anything else under the rule. It is not what Avery said was permissible, which is a Gulf oil analysis to determine whether misleading and coercive communications necessitate the invalidation of an arbitration agreement. Thank you, counsel. This case will be submitted. Thank you.
judges: McKEOWN, PAEZ, BUMATAY